**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LALISHA BARROW,                    :
                                   :   CIVIL ACTION
          Plaintiff               :
                                   :
     vs.                           :   NO. 20-CV-3628
                                   :
TRANS UNION, LLC,                  :
                                   :
          Defendant               :


**MEMORANDUM AND ORDER**


**JOYNER, J.**                                    **April  9 , 2021**


     Defendant Trans Union, LLC has brought this Fair Credit
Reporting Act matter before the Court for adjudication of its
Motion for Judgment on the Pleadings.  In response, Plaintiff
has filed a Cross-Motion for Partial Judgment on the Pleadings
or, in the alternative, to Amend her Complaint. For the reasons
outlined below, the Motions shall be denied.

**Statement of Facts**

     This case arises out of what Plaintiff, Lalisha Barrow,
alleges is the full satisfaction of her "AES account"[1] beginning
with the denomination "2PAO" on July 12, 2012 "which brought it
current with a $0 balance."  (Pl's Compl., para. 7).  Despite

---

[1] Although Plaintiff's complaint is silent as to what an "AES account" is, at
page 2 of its Memorandum in Support of its Motion for Judgment on the
Pleadings, Trans Union notes that it is a student loan from American
Education Services.

this satisfaction, the Complaint avers that on July 24, 2018,
Trans Union "reported Plaintiff's AES account as having a 'Pay
Status: Account 120 days past due.'"  (Compl., paras. 8, 9).
Plaintiff submits that it:

> is impossible and incorrect for an account that was fully
> satisfied which brought it current with a "0" balance as of
> [sic] to still be reporting as late as of 7/24/2018.  Not
> only is the AES account false on the face of the credit
> report but this reporting is extremely misleading because
> it makes it look like the Plaintiff is still late on this
> account that was previously fully satisfied.

(Pl's Compl., para. 9).

Plaintiff goes on to allege that, as dictated by the Fair
Credit Reporting Act, she "mailed a detailed and thorough
dispute letter to Trans Union" on October 27, 2017, subsequent
to which AES purportedly "verified the account as accurate and
instructed Trans Union to continue to report the inaccurate
credit information."  (Pl's Compl., para. 10).  According to the
Complaint, Plaintiff's most recent credit report is dated
7/24/2018 and it currently contains "the same inaccurate
information that was disputed on 10/27/2017." (Id.) It is
further averred that neither AES nor Trans Union has undertaken
a good faith investigation into the dispute and Trans Union does
not have reasonable procedures in place to verify and ensure
maximum possible accuracy.  (Compl., paras. 11-15).  These
failures constitute an alleged violation of the Fair Credit
Reporting Act, 15 U.S.C. Section 1681, *et. seq.* on Trans Union's

part with the result that Plaintiff has suffered a lower credit rating and credit score, as well as "great physical, emotional and mental pain and anguish, all to [her] great detriment and loss." (Compl., paras. 16-18).

In filing its motion, Trans Union asserts that it is entitled to judgment on the pleadings because its reporting of Plaintiff's American Education Services student loan account was accurate and that Plaintiff's reasonable reinvestigation procedures claim is time-barred by the FCRA's two-year statute of limitations.  In her cross-motion, Plaintiff rejoins that inasmuch as it cannot be possible that a report which indicates a current pay status as past due when it is **not** past due, *she* is entitled to the entry of judgment in *her* favor.  Alternatively, Plaintiff requests leave to amend her complaint to correct any deficiencies.

### Standards Governing Motions for Judgment on the Pleadings

Motions for judgment on the pleadings are recognized under Federal Rule of Civil Procedure 12(c), which reads quite simply as follows:

> After the pleadings have closed – but early enough not to delay trial – a party may move for judgment on the pleadings.

Under Rule 12(c), a court must accept all factual averments as true and draw all reasonable inferences in favor of the non-moving party.  Stiffler v. Frontline Asset Strategies, LLC, Civ.

3

A. No. 3:18-cv-1337, 2019 U.S. Dist. LEXIS 110308 at *2, 2019 WL 2781403 (M.D. Pa. July 2, 2019); Kilvitis v. County of Luzerne, 52 F. Supp. 2d 403, 406 (M.D. Pa. 1999)(citing Society Hill Civic Ass'n. v. Harris, 632 F.2d 1045, 1054 (3d Cir. 1980)).  As with a motion to dismiss under Rule 12(b)(6), a court in deciding a Rule 12(c) motion may consider those documents "that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, and items appearing in the record of the case.  Spector, Gadon & Rosen, P.C., Civ. A. No. 13-2691, 2015 U.S. Dist. LEXIS 42248 at *17, 2015 WL 1455692 (E.D. Pa. March 30, 2015); (citing Buck v. Hampton Township School District, 452 F.3d 256, 260 (3d Cir. 2006); Kilvitis, supra (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994)).  Likewise, any "undisputedly authentic documents attached to the motion for judgment on the pleadings" may also be considered "if the plaintiff's claims are based on the documents."  Havassy v. Mercedes-Benz Financial Services USA, LLC, 432 F. Supp. 3d 543, 545 (E.D. Pa. 2020)(quoting Atiyeh v. National Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010)).  Judgment will not be granted under Rule 12(c) "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Trinity Industries v. Greenlease Holding Co., 903 F.3d

333, 349 (3d Cir. 2018)(citing <u>Rosenau v. Unifund Corp.</u>, 539 F.3d 218, 221 (3d Cir. 2008).

Further, "judgment may only be entered where 'no set of facts could be adduced to support the plaintiff's claim for relief.'" <u>Kilvitis</u>, <u>supra</u>, (quoting <u>Bryson v. Brand Insulations, Inc.</u>, 621 F.2d 556, 559 (3d Cir. 1980). Thus, a motion for judgment on the pleadings is analyzed under the same standards as are applied to a Rule 12(b)(6) motion. <u>Zimmerman v. Corbett</u>, 873 F.3d 414, 417 (3d Cir. 2017). However, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." <u>Id</u>, at p. 225 (citing Fed. R. Civ. P. 12(d); <u>Fagin v. Gilmartin</u>, 432 F.3d 276, 284-285 (3d Cir. 2005)).

### **Discussion**

*A. Accuracy of Defendant's Credit Reporting*

Defendant's first argument in support of its motion seeking the entry of judgment on the pleadings is that it cannot be held liable under the Fair Credit Reporting Act for reporting information that is accurate.

In enacting the Fair Credit Reporting Act ("FCRA"), Congress recognized the dependence of the nation's banking

system on and the importance of, fairness and accuracy in the preparation and reporting of consumer credit reports.  15 U.S.C. §1681(a).  It was therefore the stated goal of the Act "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information…"  15 U.S.C. §1681(b).  As more succinctly stated by the Third Circuit: "[t]he FCRA 'was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner.'"  Tauro v. Capital One Financial Corp., No. 17-1065, 684 Fed. Appx. 240, 241-242, 2017 U.S. App. LEXIS 5377, 2017 WL 1162906 (3d Cir. March 28, 2017)(quoting Cortez v. Trans Union, LLC, 617 F.3d 688, 706 (3d Cir. 2010)).  Indeed, "[i]n the FCRA, Congress has recognized the crucial role that consumer reporting agencies play in collecting and transmitting consumer credit information, and the detrimental effects inaccurate information can visit upon both the individual consumer and the nation's economy as a whole."  Philbin v. Trans Union Corp., 101 F.3d 957, 962 (3d Cir. 1996)(citing 15 U.S.C. §1681(a)(1), (3)).

What's more, in enacting the Statute, "Congress also hoped to address a number of related problems, including 'the inability at times of the consumer to know he is being damaged by an adverse credit report,' the lack of 'access to the information in his file,' the 'difficulty in correcting inaccurate information,' and 'getting his version of a legitimate dispute recorded in his credit file.'" Cortez, supra.  "These consumer oriented objectives support a liberal construction of the FCRA, and any interpretation of this remedial statute must reflect those objectives."  Long v. SEPTA, 903 F.3d 312, 319 (3d Cir. 2018)(quoting Cortez, supra, and Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995)).

In furtherance of these stated goals, Section 1681e(b) mandates:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b).[2]  "Reasonable procedures are those that 'a reasonably prudent person would undertake under the

---

[2]    A "consumer reporting agency" is "any person which… regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties …"  15 U.S.C. Section 1681a(f).
As noted by the Third Circuit in its decision in Harris, infra at fn.1: "[t]he three major consumer credit reporting agencies are TransUnion, Experian, and Equifax."

circumstances.'" <u>Philbin</u>, 101 F.3d at 963(quoting, *inter alia,*
<u>Stewart v. Credit Bureau, Inc.</u>, 734 F.2d 47, 51 (D.C. Cir.
1984)).  "Judging the reasonableness of a credit reporting
agency's procedures involves weighing the potential harm from
inaccuracy against the burden of safeguarding against such
inaccuracy." <u>Id</u>.  The issue of reasonableness "is normally a
question for trial unless the reasonableness or unreasonableness
of the procedures is beyond question." <u>Seamans v. Temple
University</u>, 744 F.3d 853, 864-865 (3d Cir. 2014)(quoting <u>Cortez</u>,
617 F.3d at 709 and <u>Philbin</u>, 101 F.3d at 963).  And, under
§§1681n and 1681o, consumers have a private cause of action
against "[a]ny person who willfully fails" or "who is negligent
in failing to comply with any requirement imposed under this
title [15 U.S.C. §1681, *et. seq.*]".  Consequently, consumer
reporting agencies are subject to suit by consumers under
Section 1681e(b) when they fail to follow such reasonable
procedures as will assure this maximum possible accuracy of the

---

A "consumer report" in turn, is defined at 15 U.S.C. Section 1681a(d)(1)
as:

> [a]ny written, oral, or other communication of any information by a
> consumer reporting agency bearing on a consumer's credit worthiness,
> credit standing, credit capacity, character, general reputation,
> personal characteristics, or mode of living which is used or expected
> to be used or collected in whole or in part for the purpose of serving
> as a factor in establishing the consumer's eligibility for – (A) credit
> or insurance to be used primarily for personal, family, or household
> purposes; (B) employment purposes; or (C) any other purpose authorized
> under section 604 [15 U.S.C. Section 1681b].

information concerning those individuals about whom their reports relate.  Harris v. Pennsylvania Higher Education Assistance Agency, No. 16-2963, 696 Fed. Appx. 87, 90, 2017 U.S. App. LEXIS 11067, 2017 WL 2691170 (3d Cir. June 22, 2017).

As noted above, such a Section 1681e(b) violation may be either willful under Section 1681n[3] or negligent under Section 1681o[4].  In order to establish an actionable violation of Section 1681e(b) under a negligence theory, it must be shown that: (1) a consumer report prepared by the consumer reporting agency contained inaccurate information; (2) the inaccuracy was attributable to the consumer reporting agency's failure to 'follow reasonable procedures to assure maximum possible accuracy of the information' contained in the consumer report; (3) that the complaining consumer suffered an injury; and (4) that the consumer's injury was caused by the inclusion of the inaccurate entry.  Angino v. Transunion, LLC, No. 18-3704, 784 Fed. Appx. 67, 69, 2019 U.S. App. LEXIS 24314 at *4, 2019 WL

---

[3] Section 1681n provides generally that "[a]ny person who willfully fails to comply with any requirement imposed under this title [15 U.S.C. Sections 1681, et. seq. with respect to any consumer is liable to that consumer in an amount equal to the sum of …" [actual damages, punitive damages, costs and attorney's fees].  15 U.S.C. Section 1681n(a)(1)-(3).
[4] Section 1681o(a) similarly reads: "…[a]ny person who is negligent in failing to comply with any requirement imposed under this title… with respect to any consumer is liable to that consumer in an amount equal to the sum of –

(1) any actual damages sustained by the consumer as a result of the failure; and

(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

3822253 (3d Cir. Aug. 15, 2019); Philbin, 101 F.3d at 963;
Gagliardi v. Equifax Information Services, LLC, Civ. A. No. 09-
1612, 2011 U.S. Dist. LEXIS 10634 at *27, 2011 WL 337331 (W.D.
Pa. Feb. 3, 2011). To show willful noncompliance, "a plaintiff
can 'show that defendants knowingly and intentionally committed
an act in conscious disregard of the FCRA, but need not show
malice or evil motive.'" Shannon v. Equifax Information
Services, LLC, 764 Fed. Supp. 2d 714, 720 (E.D. Pa.
2011)(quoting Philbin, 101 F.3d at 970). Indeed, reckless
disregard of a requirement of the FCRA also rises to the level
of a "willful" violation within the meaning of Section 1681n(a).
Safeco Ins. Co. of America v. Burr, 551 U.S. 47, 71, 127 S. Ct.
2201, 2216, 167 L. Ed.2d 1045 (2007); Shannon, supra. To
prevail under either theory though, the Plaintiff must show that
her credit report contains inaccurate information - the failure
to do so is fatal to the cause of action. Angino, supra;
Schweitzer v. Equifax Info. Solutions, LLC, No. 10-4137, 441
Fed. Appx. 896, 902, 2011 U.S. App. LEXIS 16595 (3d Cir. Aug.
10, 2011).

In examining Plaintiff's complaint in light of the
preceding principles and authority, we see that it alleges that
Plaintiff's credit account contains inaccurate credit
information, *to wit,* that it is allegedly "impossible and
incorrect for an account that was fully satisfied which brought

10

it current with a "0" balance …to still be reporting as late as
of 07/24/2018," six years after the account was closed.  Despite
this purported "full satisfaction," as of July 24, 2018, Trans
Union nevertheless continued to report that the pay status on
the account was "120 Days Past Due."  Although the complaint
avers that Plaintiff disputed this reported pay status with
Trans Union and that AES subsequently verified this information
as accurate and allegedly instructed Trans Union to continue to
report it, the complaint is silent as to whether it was or was
not true that at the time the account was satisfied, it was 120
days' past due.

The complaint goes on to aver that "not only is the AES
account false on the face of the credit report but this
reporting is extremely misleading because it makes it look like
the Plaintiff is still late on this account that was previously
fully satisfied." (Pl's Compl., para. 9).  "The meaning of
'completeness' and 'accuracy' in the specific context of a
furnisher's duties under the FCRA" was a matter of first
impression confronted by the Third Circuit in Seamans v. Temple
University, supra.  In addressing this matter, the Third Circuit
made several observations: (1) that "factually incorrect
information is 'inaccurate' for purposes of FCRA"; (2) that
"even if the information is technically correct, it may
nonetheless be inaccurate if, through omission, it 'creates a

11

materially misleading impression'" and (3) that whether
technically accurate information was 'misleading in such a way
and to such an extent that it can be expected to have an adverse
effect' is generally a question to be submitted to the jury."
Seamans, 744 F.3d at 865 (quoting Boggio v. USAA Federal Savings
Bank, 696 F.3d 611, 617 (6th Cir. 2012); Gorman v. Wolpoff &
Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009), and Saunders
v. Branch Banking & Trust Co. of Virginia, 526 F.3d 142, 148 (4th
Cir. 2008)).  See also, Horsch v. Wells Fargo Home Mortgage, 94
F. Supp. 3d 665, 681 (E.D. Pa. 2015)(holding that "[o]n its face
… it is at least materially misleading and at most outright
inaccurate for … defendants Wells Fargo and CityMortgage - to
have omitted the payments made by the [plaintiff] co-debtors and
to have included a zero balance on the co-debtors' credit
reports.").

      The parties have directed this Court's attention to a
recently - decided, strikingly similar case in this District:
Bibbs v. Trans Union, LLC, E.D. Pa. Civ. A. No. 20-CV-4514, 2021
U.S. Dist. LEXIS 32893, 2021 WL 695112 (Feb. 23, 2021).  In that
case, Judge Kearney found that Trans Union had accurately
reported that Plaintiff's six student loan accounts were 120
days' past due at the time that Naviant (the creditor) closed
them and transferred the debt, and granted Trans Union's motion
for judgment on the pleadings while denying Plaintiff's cross-

motion.  As is the case here, Trans Union's report in Bibbs also
noted a $0 balance due.  Plaintiff's attorneys in that case, who
are identical to Plaintiff's counsel here and who according to
Judge Kearney, have "filed more than sixty complaints in this
District alone and several more across the country alleging
nearly identical facts," also "sent a letter to Trans Union …
disputing the report and threatening to file a lawsuit 'if this
incorrect information is not removed or corrected,'" on the
grounds that "'`is impossible for the loans current status to be
listed as late' if the balance on the loans is zero.'"  Id, 2021
U.S. Dist. LEXIS at *3.

In ruling on the motion before him in Bibbs and thereby
"determining whether the reported information is misleading,"
Judge Kearney viewed "the information through the lens of a
person in a position to make an adverse decision based on a
credit report, *i.e.,* a creditor" and accordingly elected to not
consider either the "Note on Credit Report Updates" nor the
definition of "Pay Status" as those were apparently contained in
separate "Investigation Results" which a creditor would not see.
Id, 2021 U.S. Dist. LEXIS at *9 - *10.  After surveying a number
of non-precedential rulings holding both ways, *i.e.,* finding
credit reports reporting historical past due pay status to be
both accurate and inaccurate and misleading and not misleading
as a matter of law, Judge Kearney opined that those decisions

13

finding such pay status reporting as was presented in his case to be accurate and not misleading as a matter of law to be more persuasive. Bibbs, at *18. While we have nothing but the highest regard for Judge Kearney, we nevertheless shall decline to follow the Bibbs decision in the matter before us.[5]

Here, Plaintiff has annexed a copy of the July 24, 2018 Credit Report of which she complains to her complaint, redacted in part but nevertheless revealing that her AES Account partially denominated as "2PAO" was an individual student loan account that was opened on March 19, 2001. The Report further reads: "Balance: $0," "Date Updated: 07/12/2012," "Last Payment Made: 03/31/2011," "High Balance: $985," "Pay Status: >Account 120 Days Past Due Date<," "Terms: Monthly for 149 months," "Date Closed: 07/12/2012," "Maximum Delinquency of 120 days in 02/2012 and in 07/2012." The Report further contains the following remarks: "DISP INVG COMP-RPT BY GRNTR; ACCT CLOSED DUE TO REFINANCE: CLOSED," and states the "Estimated month and year that this item will be removed: 09/2018." Finally, the Report provides a "Rating" for "06/2012," "05/2012," "04/2012,"

---

[5] Even more recently, Judge Robreno in another very similar case to this one and to Bibbs, concluded that "the reported information is neither inaccurate nor misleading" "as a matter of law." See, Parke v. Trans Union, LLC, Civ. A. No. 20-4487, Doc. No. 32 (March 5, 2021 Order). Again, while we also hold Judge Robreno in the highest regard, given the state of the record in this matter at this time, we decline to declare the information reported to be accurate as a matter of law. Instead, we believe it is more prudent to allow the parties to adduce some evidentiary support for their respective positions after which we would be more than happy to again entertain these arguments at summary judgment.

14

"03/2012," "02/2012," "01/2012" and "12/2011" as "120," "120,"

"120," "120," "120," "90" and "60," respectively.

Reading the report as a whole, we can conceive of several

different, plausible meanings which may be ascribed to these

remarks from the perspectives of a typical, reasonable reader

and a typical, reasonable creditor.  However, speculation is not

our function to perform in ruling on a Rule 12(c) motion.

Rather, we are to consider the pleadings together with those

documents "that are attached to or submitted with the complaint,

and any matters incorporated by reference or integral to the

claim, items appearing in the record of the case, and any

"undisputedly authentic documents attached to the motion,"

accept all factual averments as true and draw all reasonable

inferences in favor of the non-moving party.  Judgment should

not be granted under Rule 12(c) "unless the movant clearly

establishes that no material issue of fact remains to be

resolved and that he is entitled to judgment as a matter of

law." Trinity Industries, supra.

Although Plaintiff did annex "A Note on Credit Report

Updates"[6] to her response in opposition to Defendant's Motion for

Judgment on the Pleadings and in Support of Cross-Motion for

---

[6] Given that the annexed document appears to be "Page 2 of 6," we surmise that
this may have been part of the copy of her credit report which Plaintiff
received or was part of the response to the dispute which Plaintiff
submitted to Trans Union.  Whether it may or may not have been provided to or
made available to a typical creditor is not known by this Court.

Judgment on the Pleadings, this is effectively the only

submission over and above what was provided in and to the

Complaint and we find that it too, can be reasonably read in

several different ways.  Indeed, the Note on Credit Report

Updates reads as follows in pertinent part:

> Information in your credit report is updated frequently
> which means items you disputed may not appear on your
> credit report or have already changed by the time we
> received your dispute.  In most cases, the **Date Updated**
> represents the last time the account information was
> updated or reported by the data furnisher.  Please note
> that this date may not change following our investigation
> of your dispute.  For **Payment Received** and **Last Payment
> Made**, please keep in mind, the data may not represent very
> recent payment activity.  For inactive accounts or accounts
> that have been closed and paid, **Pay Status** represents the
> last known status of the account.

> **Definitions**

> For your reference, here are some definitions to help you
> understand **Your Investigation Results.**

….

> **Past Due:** The amount past due as of the date the account
> was verified or reported.

> **Pay Status:** The current status of the account; how you are
> currently paying.

…   (emphasis in original).

Again, <u>Seamans</u> counsels that even technically correct

information may nonetheless be inaccurate if it creates a

materially misleading impression, and that whether technically

accurate information was misleading in such a manner and to such

an extent that it could have had an adverse effect is generally a jury question.  Thus, even assuming the truth of the defendant's assertion that at the time Plaintiff's account was marked satisfied it was 120 days' overdue, the Complaint here nevertheless alleges sufficient facts to sustain the plausible inference that the report was materially misleading and to thereby give rise to a cause of action against Trans Union pursuant to Sections 1681n and 1681o of the FCRA.  In light of the competing interpretations which may be given to the credit report at issue and in the absence of any evidence attesting to how a reasonable creditor would or would not interpret it, we believe it would be premature to make a determination of accuracy based on the pleadings alone.  The motions for judgment on the pleadings are therefore denied, and the parties are free to re-argue this issue at summary judgment, after a more complete record has been developed. See also, Fitzgerald v. Trans Union, LLC, Civ. A. No. 17-3842, 2018 U.S. Dist. LEXIS 3530 at *7, 2018 WL 334530 (Jan. 8, 2018)(noting that "[w]hen a plaintiff alleges contact with a consumer credit agency, courts in this circuit have usually permitted complaints to proceed on the premise that discovery is warranted to ascertain whether or not a claim actually exists," quoting Edwards v. Equable Ascent, FNCL, LLC, No. 11-2638, 2012 U.S. Dist. LEXIS 54112, 2012 WL 1340123 at *6 (D.N.J. Apr. 16, 2012).

B. *Time Bar of Plaintiff's Reasonable Reinvestigation Procedures Claim*

Trans Union additionally asserts that even if Plaintiff could support her contention that Trans Union's credit reporting was inaccurate or materially misleading, she cannot maintain her Section 1681i reasonable reinvestigation claim because she took no further action within the prescribed two-year period after receiving notice that Trans Union had been informed by AES that the reported information was accurate.

Section 1681i details the procedure which a credit reporting agency must follow in cases of disputed accuracy and the time for responding to and otherwise addressing such disputes.  Specifically, the Statute provides, in pertinent part:

**(a)   Reinvestigation of disputed information.**

**(1)**   Reinvestigation required.

> **(A)**   In general.  Subject to subsection (f) and except as provided in subsection (g), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is accurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which

18

the agency receives the notice of the dispute
from the consumer or reseller.

**(B)** Extension of period to reinvestigate.  Except as
provided in subparagraph (C), the 30-day period
described in subparagraph (A) may be extended for
not more than 15 additional days if the consumer
reporting agency receives information from the
consumer during that 30-day period that is
relevant to the reinvestigation.

**(C)** Limitations on extension of period to
reinvestigate.  Subparagraph (B) shall not apply
to any reinvestigation in which, during the 30-
day period described in subparagraph (A), the
information that is the subject of the
reinvestigation is found to be inaccurate or
incomplete or the consumer reporting agency
determines that the information cannot be
verified.

**(2)** Prompt notice of dispute to furnisher of information.

**(A)** In general.  Before the expiration of the 5-
business-day period beginning on the date on
which a consumer reporting agency receives notice
of a dispute from any consumer or a reseller in
accordance with paragraph (1), the agency shall
provide notification of the dispute to any person
who provided any item of information in dispute,
at the address and in the manner established with
the person.  The notice shall include all
relevant information regarding the dispute that
the agency has received from the consumer or
reseller.

**(B)** Provision of other information.  The consumer
reporting agency shall promptly provide to the
person who provided the information in dispute
all relevant information regarding the dispute
that is received by the agency from the consumer
or the reseller after the period referred to in
subparagraph (A) and before the end of the period
referred to in paragraph (1)(A).

**(3)** Determination that dispute is frivolous or irrelevant.

**(A)**   In general.  Notwithstanding paragraph (1), a consumer reporting agency may terminate a reinvestigation of information disputed by a consumer under that paragraph if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information.

**(B)**   Notice of determination.  Upon making any determination in accordance with (A) that a dispute is frivolous or irrelevant, a consumer reporting agency shall notify the consumer of such determination not later than (5) business days after making such determination, by mail, or, if authorized by the consumer for that purpose, by any other means available to the agency.

…

**(4)**   Consideration of consumer information.  In conducting any reinvestigation under paragraph (1) with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information.

**(5)**   Treatment of inaccurate or unverifiable information.

**(A)**   In general. If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall –

**(i)**     promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and

**(ii)**    promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.

…

**(6)**   Notice of results of reinvestigation.

    **(A)**   In general.  A consumer reporting agency shall provide written notice to a consumer of the results of a reinvestigation under this subsection not later than 5 business days after the completion of the reinvestigation, by mail or, if authorized by the consumer for that purpose, by other means available to the agency.

    **(B)**   Contents.  As part of, or in addition to, the notice under subparagraph (A), a consumer reporting agency shall provide to a consumer in writing before the expiration of the 5-day period referred to in subparagraph (A) -

        **(i)**   a statement that the reinvestigation is completed;

        **(ii)**   a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation;

        **(iii)**   a notice that, if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the agency, including the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available;

        **(iv)**   a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the information; and

        **(v)**   a notice that the consumer has the right to request under subsection (d) that the consumer reporting agency furnish notifications under that subsection.

**(7)**   Description of reinvestigation procedure.  A consumer reporting agency shall provide to a consumer a description referred to in paragraph (6)(B)(iii) by

> not later than 15 days after receiving a request from
> the consumer for that description.
>
> …

The FCRA contains a statute of limitations which is set forth at 15 U.S.C. Section 1681p.  It reads:

> An action to enforce any liability created under this title
> [15 U.S.C. Section 1681, *et. seq.*] may be brought in any
> appropriate United States district court, without regard to
> the amount in controversy, or in any other court of
> competent jurisdiction, not later than the earlier of -
>
> **(1)** 2 years after the date of discovery by the
> plaintiff of the violation that is the basis for
> such liability; or
>
> **(2)** 5 years after the date on which the violation
> that is the basis for such liability occurs.

While federal courts appear split on the question of whether each separate notice of dispute triggers a duty to investigate even if the information has been disputed previously and the U.S. Court of Appeals for the Third Circuit has not interpreted the FCRA's statute of limitations, it also appears that most of the courts in this Circuit have "held that an action is timely if a plaintiff alleges that a furnisher of information 'continued to report information within the statutory period, regardless of whether it had begun reporting prior to the two-year statute of limitation.'"  Escobar v. Pa. Higher Education Assistance Agency Services, LLC, Civ. A. No. 17-4212, 2018 U.S. Dist. LEXIS 61004 at *10 - *11, 2018 WL 1740634 (E.D. Pa. Apr. 11, 2018)(quoting Van Veen v. AT&T Corp.,

Civ. A. No. 10-1635, 2011 U.S. Dist. LEXIS 88939, 2011 WL
4001004 at *4 (E.D. Pa. May 25, 2011) and Jaramillo v. Experian
Information Solutions, Inc., 155 F. Supp.2d 356, 360 (E.D. Pa.
2010)).  See also, Siconolfi v. Trans Union, LLC, Civ. A. No.
07-CV-660, 2009 U.S. Dist. LEXIS 91650 at *4 (E.D. Pa. Sept. 22,
2009) and Lawrence v. Trans Union, LLC, 296 F. Supp.2d 582, 587
(E.D. Pa. 2003)(both holding that "[e]ach transmission of an
inaccurate credit report results in a separate and distinct
injury"). But c.f., Chiarello v. Trans Union, LLC, Civ. A. No.
17-cv-513, 2018 U.S. Dist. LEXIS 168743 at *10, 2018 WL 4698846
(E.D. Pa. Oct. 1, 2018)(holding that Plaintiff's failure to file
credit disputes with Defendants within 2 years of statutory date
on which he should have received written notification of
reinvestigation results of his original dispute rendered his
Section 1681i claim time-barred).  Inasmuch as the weight of
authority militates in favor of holding that an action will be
deemed to have been filed timely if there was a continued
reporting of disputed information regardless of whether it had
first been reported prior to the two-year statute of limitation,
we shall follow it here.  Accordingly, Defendant's motion for
judgment in its favor on the grounds that Plaintiff's
reinvestigation claim is time-barred shall also be denied.

## **Conclusion**

For all of the foregoing reasons, the Motions for Judgment on the Pleadings filed by both parties and Plaintiff's alternative Motion to Amend filed in opposition to Defendant's request for judgment in its favor are DENIED[7].

An Order follows.

---

[7] As should be self-evident, the matter of the accuracy of the reporting and the reasonableness of the investigation(s) here are far from clear and remain matters on which discovery is appropriately undertaken. Plaintiff's motion for judgment on the pleadings is therefore also properly denied.